The Honorable Thomas S. Zilly

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

UNITED STATES OF AMERICA,  )
                                                     )   NO.   CR05-086Z
                  Plaintiff,                     )
                                                     )
11
          v.                                     )   UNITED STATES'
                                                     )   SENTENCING MEMORANDUM
12
HOWARD HSY,                               )   AND MOTION FOR DOWNWARD
                                                     )   DEPARTURE
13
                                                     )
                  Defendant.                 )   ***FILED UNDER SEAL***
14
                                                     )
15

The United States of America, by John McKay, United States Attorney for the

16

Western District of Washington, and Todd Greenberg, Assistant United States

17

Attorney, files this Sentencing Memorandum.

18

**I.      BACKGROUND**

19

Howard Hsy entered a plea of guilty to an Information charging the offense of

20

Conspiracy to Violate the Arms Export Control Act, in violation of Title 18, United

21

States Code, Section 371, and Title 22, United States Code, Section 2778.  The

22

statement of facts contained in the Plea Agreement, as well as the factual discussion in

23

the Presentence Report, set forth a summary of the defendant's criminal conduct.

24

Specifically, the statement of facts sets forth the following:

25

26
          a.  Beginning in or before 2002, and continuing through August 5, 2003,
          Howard Hsy and several unindicted coconspirators engaged in a scheme to
27
          willfully export from the United States technology on the U.S. Munitions List,
          without obtaining export licenses from the U.S. State Department.  Three of
28
          Hsy's coconspirators lived in the Seattle, Washington area (collectively referred
          to as "Seattle coconspirators").  The primary coconspirator, "coconspirator #1,"

SENTENCING MEMORANDUM
(United States v. Howard Hsy, Case No. CR05-086Z) - 1

lived in Taiwan.  As part of the conspiracy, coconspirator #1 requested that Hsy and the Seattle coconspirators procure military and dual-use technology on his behalf.  After acquiring the requested technology, Hsy and coconspirator #1 made arrangements to transport the items to Taiwan.  Coconspirator #1 paid Hsy and the Seattle coconspirators a sum of money each time they successfully exported items from the United States.  Toward the end of the conspiracy, Hsy learned that the items he caused to be exported from the United States were ultimately sent to People's Republic of China by coconspirator #1.  Hsy discussed with the Seattle conspirators that the exported technology was being sent to China.

b. Some of the technology Hsy caused to be exported from the United States was listed on the U.S. State Department Munitions List, including, but not limited to: Imaging Systems F4949 "Generation III" night-vision goggles; HGV 55/P Helmet Mount Assemblies (for use with Generation III" night-vision goggles); and Nightmate CCTV Adapter "Generation III" night-vision camera lenses.  Hsy was specifically aware that it was illegal to export such technology without first obtaining an export license or written approval from the U.S. State Department.  For example, in email correspondence with the Seattle coconspirators, Hsy discussed the fact that Generation III night-vision technologies required an export license.  At no time did Hsy or any other member of the conspiracy obtain an export license or written approval from the U.S. State Department authorizing the exportations they caused.

c.  In or about the Fall of 2002, coconspirator #1 requested that Hsy acquire Imaging Systems F4949 "Generation III" night-vision goggles.  Hsy discussed this with the Seattle coconspirators, including the fact that the goggles were export-controlled.  Hsy and the Seattle coconspirators acquired two of the goggles by using as a "front" a company owned by one of the Seattle coconspirators.  One of the Seattle coconspirators falsely told the manufacturer of the goggles that the goggles would not be exported out of the United States.  Hsy took possession of the goggles after they were delivered by the manufacturer.  Thereafter, coconspirator #1 traveled from Taiwan to Seattle, Washington.  Hsy gave the goggles to coconspirator #1, who hand-carried the goggles back to Taiwan without an export license.

d.  In or about the Spring of 2002, coconspirator #1 requested that Hsy acquire Nightmate CCTV Adapter "Generation III" night-vision camera lenses.  Using the same company as a "front," Hsy and the Seattle coconspirators acquired the lenses from the manufacturer.  In order to make it appear that the lenses remained in the United States, the Seattle coconspirators arranged to send an empty box from the front company to an address in Santa Anna, California, which was provided by coconspirator #1.  Hsy took possession of the lenses after they were delivered by the manufacturer.  Thereafter, coconspirator #1 traveled from Taiwan to Seattle.  Hsy gave the lenses to coconspirator #1, who hand-carried the lenses back to Taiwan without an export license.

e.  In or about 2003, coconspirator #1 asked Hsy to acquire HGV 55/P Helmet Mount Assemblies, which are used in conjunction with the night-vision goggles Hsy previously acquired.  Hsy acquired the helmet mounts, and was aware that they were export-controlled.  Hsy personally hand-carried the helmet mounts from Seattle to Taiwan, without obtaining an export license.  Hsy delivered the helmet mounts to coconspirator #1 in Taiwan.

SENTENCING MEMORANDUM
(United States v. Howard Hsy, Case No. CR05-086Z) - 2

It is important to note that the criminal scheme was on-going when it was interrupted by Hsy's arrest in Taiwan on August 5, 2003.  Unbeknownst to Hsy and the other participants, they had been the subject of criminal investigations both in Taiwan and in the United States (by the FBI).

## II.      OBJECTIONS TO THE PRE-SENTENCE REPORT

The Presentence Report sets forth the following calculations under the U.S. Sentencing Guidelines:

| | |
|---|---|
| Base offense level (USSG § 2M5.1) | 26 |
| Acceptance of responsibility | -3 |
| Total offense level | 23 |

In the Plea Agreement, the parties stipulated that the defendant was a minor participant in the conspiracy, and thus that a two-level downward adjustment was applicable pursuant to USSG § 3B1.2(b).  The Probation Office disagrees with this assessment, and did not apply the two-level reduction.  The government recognizes that this is a close issue, with meritorious arguments on both sides of the matter.  From the government's perspective, however, Hsy had a minor role in the offense in comparison to the individual described as "coconspirator #1" in the plea agreement, James Yeh. Yeh was a Taiwanese citizen who initiated the entire course of criminal conduct.  Yeh tasked Hsy with the technologies he wanted to acquire.  Thus, Yeh directed Hsy's activities.  Hsy acquired the technologies at issue only after being tasked by Yeh to do so.  Thus, the government respectfully submits that the minor role adjustment is applicable.  With this one exception, the government does not have any objections to the Presentence Report.

## III.     MOTION PURSUANT TO U.S.S.G. § 5K1.1

Pursuant to Section 5K1.1 of the United States Sentencing Guidelines, and Title 18, United States Code, Section 3553(e), the United States hereby moves this Court to depart from the sentencing guideline range and the statutory mandatory minimum sentence, based on the defendant's provision of substantial assistance in the

SENTENCING MEMORANDUM
(United States v. Howard Hsy, Case No. CR05-086Z) - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   investigation of other persons who have committed offenses against the United States.

2   **IV.    THE DEFENDANTS' COOPERATION**

3       Shortly after his arrest in Taiwan, Hsy began cooperating with U.S. law

4   enforcement authorities.  He has met with FBI agents, ICE agents, and prosecutors on

5   multiple occasions. His cooperation has been valuable to the government in three

6   primary respects.

7       First, he provided truthful and complete information concerning the offense of

8   conviction, and the participation therein of the coconspirators.  Hsy's information

9   directly led to the felony conviction of coconspirator Donald Shull in the case of <u>United

10  States v. Donald Shull</u>, CR05-360Z.  Hsy was willing to provide testimony against

11  Shull, which was essential in enabling the government to negotiate a plea agreement

12  with Shull.

13      Second, Hsy provided cooperation with an on-going federal investigation in San

14  Francisco in the case of <u>United States v. Phillip Chen</u>.  Hsy was an associate of Chen,

15  and was interviewed by prosecutors and FBI agents in the <u>Chen</u> case.  Hsy also agreed

16  to testify against Chen.  The <u>Chen</u> case proceeded to trial in February 2006; the trial is

17  still on-going.  Although Hsy was designated as a witness on the government's witness

18  list, for tactical reasons the AUSAs decided not to call Hsy to testify.  Nonetheless, the

19  agents and prosecutors on the <u>Chen</u> case believed that Hsy's information was truthful

20  and complete.

21      Third, Hsy's information assisted the government in determining that the

22  criminal scheme he engaged in was not broader or more widespread than had become

23  known to the FBI.  Thus, the FBI was able to confirm that the damage to national

24  security was minimal.

25  //

26  //

27  //

28  //

SENTENCING MEMORANDUM
(<u>United States v. Howard Hsy</u>, Case No. CR05-086Z) - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   **V.     UNITED STATES' SENTENCING RECOMMENDATION**

2          Pursuant to the Sentencing Guidelines as calculated in the Plea Agreement, the

3   total offense level is 21, the defendant's criminal history category is I, and the resulting

4   sentencing range is a term of imprisonment of between 37 and 46 months, and a fine

5   range of between $7,500 and $75,000.  The United States respectfully recommends that

6   the Court impose a sentence of **probation for two years, and a fine of $75,000**.  The

7   government submits that this sentence is appropriate for the following reasons.

8          1.  As set forth above, Hsy's cooperation constituted "substantial assistance."

9          2.  Following his arrest in Taiwan, Hsy demonstrated an extraordinary

10  willingness to accept responsibility for his actions.  Hsy was arrested and charged in

11  Taiwan on August 5, 2003.  He was not allowed to return home to the United States

12  until December 2005, when the case against him in Taiwan was resolved.  Shortly after

13  his arrest in 2003, however, the FBI contacted Hsy in Taiwan and informed him that he

14  was also under investigation in the United States.  Many people in Hsy's position would

15  have either delayed dealing with any potential consequences in the U.S. until they

16  returned home years later, or would have opted to permanently relocate to Taiwan in

17  order to avoid U.S. charges.  Hsy did not elect either of these paths.

18         Rather, Hsy voluntarily met with FBI agents and prosecutors in Taiwan, and

19  began his cooperation.  Hsy subsequently hired defense counsel, negotiated the terms of

20  a plea agreement with the government, and signed a written plea agreement, all while

21  he remained in Taiwan.  The government filed with this Court the signed plea

22  agreement on March 4, 2005, although Hsy still remained in Taiwan.  After the

23  Taiwanese case was resolved, Hsy coordinated his return to the U.S. through the U.S.

24  Attorney's Office and FBI, and he promptly entered his guilty plea upon his return.

25  This course of conduct speaks volumes for Hsy's acceptance of responsibility, and his

26  efforts to assist the government after his arrest.

27         3.  Hsy served approximately two months in a Taiwanese jail immediately

28  following his arrest in August 2003.  By all accounts, the conditions were

SENTENCING MEMORANDUM
(United States v. Howard Hsy, Case No. CR05-086Z) - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

uncomfortable.  Hsy subsequently was on supervised release for approximately two years in Taiwan, pending the resolution of his case.  The government's sentencing recommendation takes into account these periods of custody and supervision in Taiwan.  In addition, Hsy was convicted of a criminal offense in Taiwan.  Thus, Hsy now has a criminal history in both the U.S. (a serious felony conviction) and in Taiwan (a lesser offense).

4.  Hsy's history and characteristics weight in favor of a probationary sentence.  Hsy is 70 years old, and has no prior arrests or criminal history.  He is a retired Boeing employee.  The government does not anticipate that Hsy will be involved in any future criminal conduct.

5.  A probationary sentence in this case would be consistent with the sentence this Court imposed upon coconspirator Donald Shull.  Shull was a lesser participant in the conspiracy, profited to a lesser extent than did Hsy, but he did not cooperate with the government.  Shull was sentenced to two years' probation and a fine of $10,000.

6.  The Sentencing Guidelines fine range in this case is $7,500 - $75,000.  The government believes that a fine at the high-end of this range, $75,000, is justified for two reasons.  First, it is an appropriate component of punishment for Hsy's offense, which was primarily, if not exclusively, motivated by greed.  Second, a fine of $75,000 would disgorge Hsy of the majority of profits he earned as a result of the conspiracy.  It is difficult for the government to estimate precisely the total profits Hsy realized as a result of the criminal conduct in this case.  However, the government is aware that during conversations with his coconspirators, Hsy stated that he made $100,000 during the venture.  Financial records in possession of the government confirm that Hsy received payment from James Yeh of $31,000 for some of the goggles that were exported.  Assuming that Hsy was paid similar amounts for the other exported products, his estimate of $100,000 may be accurate.  In any event, the government believes that a fine of $75,000 is sufficient for the purposes of punishment and disgorgement.

SENTENCING MEMORANDUM
(United States v. Howard Hsy, Case No. CR05-086Z) - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    WHEREFORE, the government respectfully recommends that the Court impose

2  a sentence of two years' probation and a fine of $75,000.

3    DATED this 16th day of March, 2006.

4                                            Respectfully submitted,

5                                            JOHN McKAY
                                             United States Attorney
6
                                               /s Todd Greenberg
7                                            TODD GREENBERG
                                             Assistant United States Attorney
8                                            United States Attorney's Office
                                             700 Stewart Street
9                                            Seattle, Washington 98101
                                             Facsimile: 206-553-4440
10                                           Phone: 206-553-2636
                                             E-mail: Todd.Greenberg4@usdoj.gov
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

1

# CERTIFICATE OF SERVICE

2      I hereby certify that on March 16, 2006, I electronically filed the foregoing with
the Clerk of Court using the CM/ECF system which will send notification of such filing

3  to the attorney(s) of record for the defendant(s).  I hereby certify that I have served the
attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

4

                                    s/Leah Melendy

5                                      LEAH MELENDY
                                    Legal Assistant

6                                      United States Attorney's Office
                                    700 Stewart Street, Suite 5220

7                                      Seattle, Washington 98101
                                    Phone: (206) 553-2486

8                                      FAX:   (206) 553-2502
                                    E-mail: leah.melendy@usdoj.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28